Roger Harold NORDLING, Petitioner,

v.

Joseph H. CRABTREE, Warden, FCI, Sheridan; United States Parole Commission, Respondents.

No. 96–1103.

United States District Court, D. Oregon.

Jan. 24, 1997.

Roger Harold Nordling, Sheridan, OR, pro se.

Kenneth C. Bauman, U.S. Atty's Office, Portland, OR, for Respondents.

HOGAN, Chief Judge.

Petitioner seeks a writ of habeas corpus (# 1) under 28 U.S.C. § 2241 on the ground that the United States Parole Commission acted outside its authority under former 21 U.S.C. § 841(c) by requiring petitioner to serve a second term of special parole after revoking his first term. Respondent moves to deny the petition. # 6.

## FACTS

On September 24, 1985, petitioner pleaded guilty to possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a). He was sentenced to five years incarceration and five years special parole.[1] Petitioner completed his five year prison sentence on December 28, 1991[2] and began serving his five-year special parole term.

On October 19, 1993, the Parole Commission issued a special parole violator's arrest warrant for petitioner and took petitioner into custody October 26, 1993. After a hearing, the Parole Commission revoked petitioner's special parole without credit for time served on special parole ("street time") and ordered petitioner to serve eight months incarcerated in a drug aftercare program. After eight months, on June 24, 1994, petitioner was released to serve the remainder of his five year special parole, eight months having

been credited due to petitioner's completion of the drug aftercare program.

On April 15, 1994, the Parole Commission issued a second special parole violator's arrest warrant for petitioner and arrested petitioner on April 30, 1996. After a hearing, the Parole Commission revoked petitioner's special parole term without credit for street time and ordered petitioner serve another 16 months in the drug aftercare program.

According to defendants, petitioner is scheduled to be released on August 29, 1997 to complete his term of special parole. That special parole term, unless revoked, would expire August 30, 2000, crediting 24 months for petitioner's completion of drug aftercare programs.

## DISCUSSION

### 1. Exhaustion

Respondents contend the petition should be denied because petitioner has not exhausted his administrative remedies. Though exhaustion in section 2241 proceedings is neither a statutory nor jurisdictional requirement, the court has the authority to require a section 2241 petitioner to pursue available administrative remedies prior to filing his section 2241 petition. *See Francis v. Rison*, 894 F.2d 353, 354 (9th Cir.1990). Here, however, respondents have not indicated whether administrative review of plaintiff's claims would still be available and, therefore, have not adequately presented an exhaustion defense.

Respondents also argue that any absence of available administrative remedies is due to petitioner's failure to present his present claims to the Parole Commission in his appeal. *See* Notice of Action of Presumptive Parole Date of August 29, 1997, Ex. E to Petitioner's Memorandum in Support of Petition (# 2). In *dictum*, the Ninth Circuit has cited with approval the Seventh Circuit's holding that an inmate may not argue a claim

---

**1.** What makes special parole "special," that is different from ordinary parole, is that it is ordered by the sentencing judge and the parolee forfeits the time spent on special parole ("street time") automatically upon revocation of parole. *See* section 841(c).

**2.** Petitioner was released on ordinary parole on April 23, 1989 but violated his parole in such a way that none of his street time was credited.

in a section 2241 petition which he failed to present on administrative appeal unless he shows "cause and prejudice." *Francis,* 894 F.2d at 355 (citing *Sanchez v. Miller,* 792 F.2d 694, 698 (7th Cir.1986)).

Even if petitioner retains available administrative remedies or procedurally defaulted on such remedies, he may be excused from the exhaustion and cause and prejudice requirements by establishing the futility of advancing his claims through available administrative channels. *Dougherty v. Crabtree,* 812 F.Supp. 1089, 1091 (D.Or.1991). Here, the available administrative channels are provided by the Parole Commission, which promulgated regulations permitting a special parole violator to be placed back under special parole after his special parole has been revoked. *See* 28 C.F.R. § 2.57(c). The Parole Commission later revised that regulation to state that special parole violators shall receive no credit for time spent on special parole prior to revocation. 28 C.F.R. § 2.57(c), *effective* April 20, 1989. The fact that the only body of administrative review is the body responsible for drafting and administering the regulations at issue in this proceeding makes this a "unique circumstance" under which the administrative exhaustion requirement may be waived. *See Dougherty,* 812 F.Supp. at 1091.

### 2. Propriety of Second Term of Special Parole

■ Special parole is a type of post-release supervision that existed prior to the advent of the sentencing guidelines. The special parole process is governed by 21 U.S.C. § 841(c), *repealed,* Pub.L. 98–473:

A special parole term imposed under this section ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the new term of imprisonment.

The United States Parole Commission, which is the agency charged with administering former section 841(c), promulgated regulations allowing it to impose a subsequent term of special parole, in addition to the new term of imprisonment, after revoking the parolee's prior special parole. 28 C.F.R. §§ 2.52 and 2.57(c). Petitioner challenges these regulations, arguing that section 841(c) does not authorize the Parole Commission to recreate a special parole term once it has been revoked.

*Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) requires the courts to defer to an administering agency's reasonable construction of an unclear statute. Some courts have held that the word "revoke" is unambiguous such that it precludes subsequent special parole terms. *E.g. Artuso v. Hall,* 74 F.3d 68 (5th Cir.1996) (after special parole is revoked, Parole Commission has no authority to impose additional parole) and *Evans v. United States Parole Comm'n,* 78 F.3d 262 (7th Cir.1996) (once special parole is revoked, Parole Commission has no authority to impose special parole but may impose ordinary parole). However, other courts have recognized that the word "revoke" may not mean special parole cannot be reissued, especially where the statute creates a new term of imprisonment and grants the Parole Commission discretion in administering the additional term. *See Billis v. United States,* 83 F.3d 209 (8th Cir.1996) and *United States Parole Comm'n v. Williams,* 54 F.3d 820 (D.C.Cir.1995). While the Ninth Circuit Court of Appeals has not directly addressed the issue, it has held that the Parole commission acted properly in rescinding a special parolee's credit for time served on his initial term of special parole as well as time served on his subsequent term of special parole, which the Parole Commission had issued after revoking the parolee's initial special parole term. *McQuerry v. United States Parole Comm'n,* 961 F.2d 842, 847–48 (9th Cir. 1992).

The language of section 841(c) is unclear with regard to the Parole Commission's authority to issue subsequent terms of special parole after revoking the initial term. Under *Chevron,* this court is obligated to defer to

the Parole Commission's interpretation of section 841(c) as long as that interpretation is reasonable.

An interpretation allowing the imposition of subsequent terms of special parole is reasonable given the language creating an additional term of imprisonment and giving the Parole Commission discretion in administering that additional term. Moreover, such an interpretation is consistent with the statute as well as the original sentencing order in that it requires the parolee to serve the entire length of his sentence as a combination of imprisonment and special parole without being credited for street time. If section 841(c) were read to prohibit the Parole Commission from reissuing any type of parole, *e.g. Artuso,* it would give the Parole Commission the option of requiring the inmate to serve his entire special parole sentence incarcerated or allow the inmate to go free for some portion of the original term of special parole. Read to allow imposition of ordinary parole following revocation of special parole, *e.g., Evans,* section 841(c) would give the Parole Commission the option of requiring the inmate to serve his entire special parole sentence incarcerated or allow the inmate to be released for some portion thereof on less stringent parole conditions than imposed by the sentencing judge, not as a result of good behavior, but as a result of the inmate's bad behavior while on special parole.[3] In addition to the language of section 841(c), *Chevron,* and the reasonableness of the result as outlined above, this court's decision is guided by the opinion in *McQuerry,* which would have been undermined had the Ninth Circuit Court of Appeals considered subsequent special parole terms improper under section 841(c).

## CONCLUSION

Under the principles discussed above, the Parole Commission acted properly in imposing on petitioner a subsequent term of special parole after revoking his initial term. Accordingly, respondent's Motion to Deny Petitioner's Petition for Habeas Corpus is allowed, and petitioner's Petition for Habeas Corpus (# 1) is dismissed.

---

**3.** Ironically, it is unclear whether petitioner or other special parolees would benefit from the decision petitioner advocates. If the Parole Commission lacks authority to impose a subsequent term of special parole, the appropriate remedy may be to enjoin the Parole Commission to require petitioner to serve his remaining special parole term incarcerated. Such a decision may also lead the Parole Commission to require inmates who violate their initial special parole to complete their special parole term incarcerated, rather than giving them another chance to make good.